## Case No. 10,049.

NATIONAL PARK BANK v. PEOPLE'S BANK et al.

[25 Int. Rev. Rec. 169; 8 Reporter. 8; 14 Phila. 405; 36 Leg. Int. 204; 26 Pittsb. Leg. J. 178.]

Circuit Court, E. D. Pennsylvania. May 13, 1879.

BANKRUPTCY — COMPOSITION WITH CREDITORS — PAYMENT OF CREDITORS REFUSING TO JOIN.

[A payment. by the debtor, of a creditor who refused to join in the composition agreement. out of funds reserved, and not included in the schedule, does not operate to the injury of creditors signing the composition, so as to give them any right to recover from the creditor paid a proportion of the money thus received.]

The facts of this case. very briefly, are as follows: Landenberger & Co., being in financial difficulties, entered into a composition deed with certain creditors, among whom was the Park Bank, by which the Philadelphia Trust & Safe Deposit Co., of Philadelphia, was designated as trustee. The People's Bank of Philadelphia, another creditor, refused to sign the deed. and commenced suit against Landenberger & Co. upon certain of their notes held by it. Landenberger & Co. instructed Stokes, Caldwell & Co. to take up these notes and charge them with the amount. Stokes, Caldwell & Co., who were indebted to Landenberger & Co., did take up the notes, amounting to $25,000, charged Landenberger & Co. with that sum, and, having handed over the notes to them, took their receipt for $25,000.

W. H. Sharpless and R. C. McMurtrie, for Park Bank.

Hood Gilpin and F. C. Brewster, for People's Bank and William H. Kemble.

William Ernst, for Stokes, Caldwell & Co.

[The People's Bank was not paid out of any of the schedule assets. How then was the trust injured? It was benefited, because the payment left no assets for the rest. The assignment of November 10, 1873, was a new mortgage. Corn Exchange National Bank v. Philadelphia Trust, etc., Co. [Case No. 3,244]. What standing has the Park Bank to ask the relief sought? If the assignment was binding, all the creditors should be parties. Henry v. Patterson, 57 Pa. St. 346. See, also, Lower v. Clement, 25 Pa. St. 63; Lane's Appeal, 82 Pa. St. 289; 2 Beav. 385; 3 Ves. Jr. 456. But even if the bank or Kemble is responsible, Stokes, Caldwell & Co. are not; they surely bought the notes; Kemble concealed his real character when called upon to speak out.] [2]

BUTLER, District Judge. The ground on which the plaintiffs seek to charge the People's Bank is, that by reason of the contract with Landenberger & Co., it sustains such relations to them that the money received on the notes must be treated as received on joint account; assuming that the bank is a party to the contract. The claim against Stokes, Caldwell & Co. rests on a similar basis. Taking the alternative that the bank is not a party to the contract, and not, therefore, responsible; that the notes were purchased by Stokes, Caldwell & Co. (as Mr. Kemble and others testify), and asserting that they, as such creditors of Landenberger & Co., entered into the contract, through the agency of Mr. Kemble; and that they were subsequently paid, the plaintiffs claim that

2 [From 8 Reporter. S.]

the money so paid must be treated as received on joint account. The ground on which Mr. Kemble is sought to be charged is different. The plaintiffs state it in the original bill as follows: "That William Kemble may be compelled, if it shall appear that the People's Bank is not bound by his acts, to make good the contract, he, by the composition agreement professed to make, as respects their claim." Possibly a similar charge of deceit in procuring the plaintiff's signature to the agreement is intended to be preferred by the plaintiffs against Stokes, Caldwell & Co. If such is intended the purpose is not plainly stated. In the view we take of the case, however, this, as will hereafter be seen, is unimportant.

A careful examination of the evidence has satisfied us that the bank had no interest in the notes when the contract was executed. All the testimony tends to this conclusion. Whether the transaction between it and Stokes, Caldwell & Co. be treated as a sale or a payment, its interest in the debt was gone. It is equally clear that the bank and those representing it had steadfastly resisted all efforts to compromise, and that the payment to them of the $25,000, was unaccompanied by any promise whatever. Being in a position to compel payment, it felt no interest in the proposed scheme of composition. Mr. Kemble was not authorized to enter into the contract for it, either by anything occurring at the time the claim was satisfied or afterwards. Nor in our judgment did he undertake to do so. When induced by Mr. Caldwell to sign the paper, he not only omitted his title as president of the bank, but affixed the term "attorney" to his name, as if to guard against an inference that he was representing that institution. The examination has also satisfied us that Stokes, Caldwell & Co. were not purchasers of the notes; that they paid them simp.y as agents for Landenberger & Co. About this we believe there can be no room for doubt. All they did was in pursuance of Landenberger & Co.'s instructions, and with their funds; and the notes, when obtained, were immediately handed over as paid. It would not be remarkable, however, that the officers of the bank should have regarded the transaction as a purchase by Stokes, Caldwell & Co. It was spoken of as such by Mr. Landenberger in his communications with the latter gentleman; and very probably in the same way by them in their communications with the bank. Mr. Dixey says, Landenberger, on being informed that Kemble declined to have any connection with the proposed settlement, requested Mr. Caldwell and himself to do the best they could with Kemble; to "buy the paper," if necessary, and charge the amount to him. Nevertheless, the transaction was a payment of the notes. Its substance, we have no doubt, is accurately stated in the following extract from the testimony of Mr. Stokes: "About

the first of January, 1874, the paper matured, and Landenberger came to the store. I think he stated there that the paper would be immediately put in execution against the firm of Landenberger & Co. He requested my partner, Mr. Dixey, to take the composition deed to the bank, and see if he could get Kemble to sign it. Dixey returned in a very few minutes and said they declined to sign it. Landenberger then requested Stokes, Caldwell & Co. to take up the notes, and charge the amount to Landenberger & Co. Mr. Caldwell, I think, on that day,—perhaps not until the next or the day after; I know I was present at the time,—paid the paper, took Mr. Landenberger's receipt for $25,000, and surrendered the paper to him." This statement is substantially repeated by both Mr. Dixey and Mr. Caldwell. This view of the facts disposes of the claim made against the People's Bank, and Stokes, Caldwell & Co.; founded on the allegation that they are parties to the contract.

The claim against Mr. Kemble, as we have seen, rests upon different ground. Charging him with fraud in representing the notes as outstanding, while in fact they were paid or to be paid, from the reserved property of the debtor, the plaintiffs, in effect, say they were thus induced to bind themselves to the contract, believing the holder of these notes was taking his chances with them; and they ask, therefore, that this defendant be required to "make good the contract"; in other words, required to compensate them for the injury thus sustained. If a similar charge of deceit was intended to be preferred by the bill against any other of the defendants, what follows will apply to it with as much force as that stated against Mr. Kemble. Passing over all debatable ground, and coming directly to the question of injury, we find no evidence to support a decree in the plaintiffs' favor. It does not appear that their situation would have been improved by declining to unite in the contract; nor that they would have so declined if they had known the notes to be paid. Such payment did not, we think, render the agreement any less desirable; or in any respect injure the plaintiffs. It was not made from funds set apart for them, or over which they had any control. The argument that it withdrew from the debtor property with which he might have successfully conducted business, and earned the means of paying them, is wholly speculative. The money was quite as likely to have been lost, if left in his hands, as the large balance which he retained actually was. The vice of the argument consists in the assumption that the plaintiffs had any direct interest in this property. They certainly had not. It belonged to the debtor alone, who might use it as he pleased—waste it in extravagance, or pay it to any one whom he owed. If he had been defrauded of it, the plaintiffs would have had as good claim

against such wrong doer as they have against Mr. Kemble. They had no greater or other interest in the property than every creditor has in the property of his debtor. The application of it, therefore, to the payment of the notes, and the concealment or misrepresentation of this fact, cannot be said to have injured the plaintiffs. On the contrary, as the sequel has shown, this use of it, in relieving the debtor and the assigned estate from a large claim, is more likely to have benefited them than the retention of it in his hands.

And now, May 13, 1879, the above cause having been heard upon the pleadings and proofs, it is ordered, adjudged, and decreed by the court, that the complainant take nothing by its bill filed in the above case, and that the said bill of complaint be dismissed as to all the defendants in the above cause, without prejudice. And it is further ordered that the complainants pay the costs of this suit.